UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

NICOLE HAYES WILLIAMS

VERSUS

LIBERTY MUTUAL INSURANCE
COMPANY

CIVIL ACTION

NO. 09-883-BAJ-SCR

**RULING ON MOTION FOR SUMMARY JUDGMENT**

I.  **BACKGROUND**

Plaintiff, Nicole Hayes Williams ("Williams"), filed suit against her homeowner's insurer, Liberty Mutual Insurance Company ("Liberty Mutual"), on September 1, 2009, in the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana. Williams' petition arose from damages that were sustained to her residence in Baker, Louisiana in September of 2008 as a result of Hurricane Gustav. On September 2, 2008, Williams submitted a claim seeking compensation under the insurance policy for wind damages to her home caused by the hurricane.[1] An adjuster from Liberty Mutual inspected Williams' home for damage on September 5, 2008.[2] On September 5, 2008, Williams submitted a second claim, for fire damages sustained to the home.[3] Liberty Mutual requested a re-inspection of the property to evaluate the damages caused by the hurricane

---

1  See Defendant's Exhibit A, Affidavit of Raymond Carrell, ¶ 4 (doc. 13-2)
2  Id.
3  Due to the lack of electricity caused by the hurricane, Williams states that her family was forced to cook their food on an outside barbeque grill. Use of this grill underneath the attached carport of the house led to a fire which caused further damage to the home. See, Memorandum in Opposition to Defendant's Motion for Summary Judgment (doc. 23), p. 2.

1

and the fire.[4] On October 2, 2008, a Liberty Mutual adjuster met with Williams and her contractor and inspected the property again for damages.[5] Following the second inspection, Liberty Mutual issued a payment to Williams on October 7, 2008 in the amount of $10,113.86, and an additional payment of $732.24 on October 15, 2008, for the damage to the home caused by the hurricane.[6] Pursuant to the terms of the policy, Liberty Mutual withheld from the hurricane damage payments a sum of $548.02, representing an amount for recoverable depreciation, which Williams could recoup upon supplying proof that the repairs to the home for the hurricane damage had been made, and that the repair costs exceeded the amount of the payments from Liberty Mutual.[7] Liberty Mutual issued a separate payment to Williams in the amount of $127,031.28 for the fire damages and the resulting loss of use of the home.

Liberty Mutual requested that Williams submit to an examination under oath in relation to the number of claims which had been made against her homeowner's insurance policy.[8] On January 14, 2009, Williams appeared without counsel and participated in the examination under oath. During the course of the examination under oath, Williams was questioned about the veracity of a previous claim she submitted for losses caused by theft. Liberty

---

[4] Liberty Mutual's Memorandum in Support of Motion for Summary Judgment (doc. 13-1), p. 2.
[5] Affidavit of Raymond Carrell, ¶ 8
[6] Affidavit of Raymond Carrell, ¶¶ 9, 11
[7] Affidavit of Raymond Carrell, ¶ 11.
[8] Liberty Mutual submits that in addition the hurricane and fire damage claims, Williams had previously made claims against the homeowner's policy for wind or hail damage on June 5, 2007, and for theft on October 12, 2007.

Mutual revealed that it had received a letter which indicated that the theft-related claim may have been fraudulent. Williams orally agreed to release Liberty Mutual from further liability in relation to each of the pending claims, with the exception of the claim for recoverable depreciation, in exchange for Liberty Mutual discontinuing any investigation against Williams for fraud.

Williams' lawsuit was removed to federal court pursuant to a notice of removal (doc. 1) filed by Liberty Mutual on September 14, 2009. Williams prays for compensation under the homeowner's policy. Additionally, Williams seeks recovery for mental anguish, attorney's fees, and general and special damages pursuant to La. R.S. 22:1220 and 22:658. Liberty Mutual filed the present motion for summary judgment (doc. 13) seeking dismissal of each of Williams' claims. Williams has filed oppositions (doc 23 and 25) to Liberty Mutual's motion for summary judgment. Liberty Mutual has filed a reply (doc. 29) to the plaintiff's opposition memoranda. The jurisdiction of this Court is founded on 28 U.S.C. §1332.

## II. ARGUMENT

In its motion for summary judgment, Liberty Mutual asserts that during the examination under oath, Williams orally agreed to release Liberty Mutual from further liability for her pending insurance claims. Liberty Mutual further contends that this agreement was memorialized in writing when Williams signed a copy of

3

the transcript of the examination under oath.[9] Liberty Mutual maintains that the only claim reserved by Williams was for recoverable depreciation for damage sustained to the home in the hurricane. The defendant argues that the examination under oath signed by Williams constitutes a compromise pursuant to Louisiana Civil Code article 3071, whereby Williams validly relinquished all of her claims against the insurer, with the exception of the claim for recoverable depreciation. Liberty Mutual further argues that Williams' statements contained in the examination under oath constitute a remission of debt pursuant to Louisiana Civil Code article 1888. Pursuant to Louisiana law, Liberty Mutual maintains that both a compromise and remission of debt preclude Williams from recovering against Liberty Mutual for those claims which have been surrendered.

Concerning the claim for recoverable depreciation, which Liberty Mutual argues is the only claim which Williams has legitimately reserved, the homeowner's policy requires that the claim for replacement loss be made within 180 days after the loss.[10] Liberty Mutual concedes that Louisiana Revised Statue 22:1264 supersedes this policy provision and that the statute provided Williams with one year from the final issuance of the applicable insurance proceeds to seek a return of recoverable depreciation. Nevertheless, Liberty Mutual asserts

---

9     Liberty Mutual submits as Exhibit B-1 a copy of the transcript of the examination under oath, including a certification signed by Williams which indicates that the transcript of the examination under oath is true and correct, and further indicating that Williams has not provided any changes to the transcript. Exhibit B-2 is a letter addressed to Williams from a law firm representing Liberty Mutual, asking Williams to return a signed copy of the transcript of the examination under oath to the firm.
10     Liberty Mutual submits a copy of Williams' homeowner's policy as Exhibit A-1.

that it last issued a payment to Williams on October 15, 2008, and because Williams did not make a claim for recoverable depreciation within one year from that date, Williams is now precluded from seeking recovery for this claim.

In opposition to Liberty Mutual's motion for summary judgment, Williams submits that the signed examination under oath does not qualify as a compromise pursuant to the Louisiana Civil Code. She asserts that the signed examination under oath does not meet the form requirement for a valid compromise, which is required by law to be either recited in open court or made in writing. In her supplemental opposition to the motion for summary judgment, Williams maintains that any statement on which Liberty Mutual relies as evidence of a remission is an oral statement made by Williams, and that an oral statement is not sufficient to remit claims arising under a written contract of insurance.

## III. LAW AND ANALYSIS

### A. Compromise of Williams' claims against Liberty Mutual

Compromises under Louisiana law are governed by the provisions of the Louisiana Civil Code. La. C.C. art. 3071 provides:

> A compromise is a contract whereby the parties, through concessions made by one or more of them, settle a dispute or an uncertainty concerning an obligation or other legal relationship.

Moreover, La. C.C. art. 3072 specifies form requirements for a valid compromise as follows:

> A compromise shall be made in writing or recited in open court, in which case the recitation shall be susceptible of being transcribed from the record of the proceedings.

In the present case, it is undisputed that a compromise between the parties was never recited in open court. Accordingly, evidence of a writing must be shown in order for the Court to find a binding compromise. The issue is whether a copy of the transcript of the examination under oath, conducted by Liberty Mutual and signed by Williams, qualifies as a compromise pursuant to the governing provisions of the Louisiana Civil Code, particularly with respect to the requirements of form.

Regarding La.C.C. art. 3072 and its writing requirement, the Louisiana Supreme Court has stated that "while the statute itself does not provide for the consequences of failure to reduce a compromise agreement to writing, this Court has previously held that a compromise which is not reduced to writing is unenforceable. Furthermore...the requirement that the agreement be reduced to writing necessarily implies that the agreement be evidenced by documentation signed by both parties." *Felder v. Georgia Pacific Corp.*, 405 So.2d 521, 523 (La. 1981). Although the absence of a writing has been held to be fatal to the perfection of a valid compromise agreement, Louisiana courts have determined nevertheless that "there is no sacrosanct form which much be followed, and that it is not necessary that everything intended to be compromised be contained in

one document." *Charbonnet v. Ochsner*, 236 So.2d 86 (La.App. 4th Cir. 1970), affirmed, 246 So.2d 844 (La. 1971); *Parich v. State Farm Mut. Auto. Ins. Co.*, 919 F.2d 906 (5th Cir. 1990). It is clear, however, that what is required is that the writing, whether contained in one or more documents, must satisfy two essential elements: "(1) mutual intention of preventing or putting an end to the litigation, and (2) reciprocal concessions of the parties to adjust their differences." *Trahan v. Coca Cola Bottling Co. United, Inc.*, 2004-0100 (La. 3/2/05), 894 So.2d 1096, 1104. When the instrument or instruments "read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement, a written compromise agreement has been perfected." *Klebanoff v. Haberle*, 43,102 (La.App. 2 Cir. 3/19/08), 978 So.2d 598, 602; *Preston Law Firm, LLC v. Mariner Health Care Management Co.*, 622 F.3d 384, 390 (5th Cir. 2010).

The Court finds that the examination under oath signed by Williams does not contain all of the elements necessary for the perfection of a valid compromise under Louisiana law, and therefore, the alleged compromise cannot be enforced against Williams as a bar to the present lawsuit. Liberty Mutual avers that "[a]t the end of the examination under oath, plaintiff voluntarily agreed to release all of her claims against Liberty Mutual related to Hurricane Gustav, the September 5, 2008 fire, and the alleged theft on October 12, 2007 *in exchange for Liberty*

*Mutual discontinuing its investigation.*" (emphasis added).[11] However, a review of the examination under oath reveals that the document itself does not contain any statements made on behalf of Liberty Mutual obligating the company to discontinue its investigation against Williams in exchange for Williams' agreement to release the pending claims. In fact, the portion of the examination under oath quoted by Liberty Mutual in support of its motion for summary judgment only recites Williams' agreement to release her claims against Liberty Mutual, but makes no reference to any reciprocal concession by Liberty Mutual to discontinue an ongoing investigation against Williams. As articulated by the Louisiana Supreme Court, a compromise requires "reciprocal concessions of the parties to adjust their differences." *Trahan, supra.*

Liberty Mutual contends that at some point during the course of the examination under the oath, the parties agreed to go off the record. The insurer asserts that it was during this off the record exchange between Williams and Liberty Mutual's counsel that Williams orally agreed to release Liberty Mutual from any further obligation. Whether there was a reciprocal offer made by Liberty Mutual during the off the record discussion to discontinue further investigation of Williams, is impossible to ascertain, as this offer was not memorialized in the written transcript of the examination under oath. Liberty Mutual has provided no other written document that describes its obligations to

---

11   Liberty Mutual's Motion for Summary Judgment, p. 4 (doc. 13-1).

Williams in exchange for Williams' agreement to relinquish her policy claims.

Moreover, the Court finds that the copy of the examination under oath signed by Williams fails to meet the formal requirements of a compromise, in that it was not signed by both parties. Liberty Mutual presents as Exhibit B-2 a letter from a law firm addressed to Williams directing her to return to the firm a signed copy of the examination under oath. While it may be argued that this letter constitutes a signed writing on behalf of Liberty Mutual, the letter, like the examination under oath, fails to delineate Liberty Mutual's reciprocal obligation to Williams pursuant to the parties' agreement. Accordingly, the Court finds that the transcript of the examination under oath signed by Williams fails to meet the requirements for a valid compromise pursuant to Louisiana law.

### B. Remission of Williams' claims against Liberty Mutual

Liberty Mutual submits that Williams' statements relieving the insurer from further liability for the hurricane, fire and theft claims operate as a remission of debt under Louisiana law. In opposition, Williams posits that the Court cannot find Williams' statements to constitute a valid remission because her statements were not voluntary, in the sense that she was unaware of what she was doing, and because oral statements cannot validly remit an obligation pursuant to a written contract of insurance.

Regarding a remission of debt, La. C.C. art 1888 provides:

> A remission of debt by an obligee extinguishes the

obligation. That remission may be express or tacit.

Further, La. C.C. art. 1890 states:

> A remission of debt is effective when the obligor receives the communication from the obligee. Acceptance of a remission is always presumed unless the obligor rejects the remission within a reasonable time.

"Voluntary remission is a method by which obligations are extinguished. An undisputed claim may be discharged in whole or in part by voluntary remission. No consideration is required and the absence of a dispute is wholly unimportant. All that is required under the remission articles is a finding that the creditor intended to remit his claim or that he estopped himself to claim the contrary." *Cowley Corp. v. Shreveport Packing Co., Inc. of Kansas*, 440 So.2d 1345, 1351 (La.App. 2 Cir. 1983), citing *Arender v. Gilbert*, 343 So.2d 1146, 1152 (La.App. 3 Cir. 1977). "While the remission of a debt cannot be revoked by the creditor, remission is never presumed unless it clearly appears that the creditor intended to do so. The burden of proving remission, whether express or tacit, is on those claiming remission." *Succession of Martin*, 225 So.2d 494, 497 (La.App. 2 Cir. 1976). "No particular form for remission is necessary and the remission may either occur by oral declaration or in writing." *Arledge v. Bell*, 463 So. 856, 858 (La.App. 2 Cir. 1985). See also, *Franicevich v. Dumas*, 150 So.2d 116, 119 (La.App 3 Cir. 1963).

Pursuant to Louisiana jurisprudence, the Court finds lacking in merit the

plaintiff's contention that a remission is invalid if not in writing. The record establishes that Williams made clear, unambiguous statements which would constitute a remission of debt under the law. The more pertinent issue for the Court's consideration is whether Williams knowingly and voluntarily made the statements releasing Liberty Mutual.

During the course of examination under oath, Liberty Mutual reviewed individually each of Williams' claims, including specific items which Williams claimed as a loss. Williams' responses to the questioning do not reveal any intent to relinquish her claims against Liberty Mutual. Williams was instructed to provide Liberty Mutual with a handwritten, notarized inventory of all items claimed as lost a result of Hurricane Gustav, the fire and the burglary.[12] At the conclusion of the examination, there is a notation in the transcript that a short recess was taken.[13] The conversation which occurred during the recess was not recorded. It is apparent, however, that whatever transpired during the recess caused a significant shift in Williams' position as to the insurance claims. After going back on the record and being reminded that she remained under oath, Williams advised the defendant's attorney of her decision to withdraw any continuing claim against Liberty Mutual related to the hurricane, fire, or burglary losses.[14]

---

12   Exhibit B-1, p. 101, line 22 - p. 105, line 5.
13   Exhibit B-1, p. 104, line 11.
14   See Exhibit B-1, p. 105, lines 1 – 13 (Q. [Liberty Mutual] And my understanding is that you at this point want to withdraw any continuing claim you have related to Hurricane Gustav, related to the fire at your home and related to any remnants of the burglary claim or the fire to your vehicles and that you want to withdraw that claim from this point forward. Anything you haven't been paid on

The record provides no explanation for Williams' agreement to relinquish the pending insurance claims. The record is also devoid, however, of any evidence suggesting that Williams lacked the capacity to validly remit Liberty Mutual's obligations pursuant to the insurance policy. Liberty Mutual submits that Williams elected to discontinue further pursuit of the insurance claims so that in exchange, Liberty Mutual would not undertake an investigation into the validity of the claims for which Williams had already received payment. In the absence of evidence of fraud or bad faith on the part of Liberty Mutual, an evaluation of Williams' motivation for remitting the debt is unwarranted. As has been recognized by Louisiana legal scholars:

> When remitting a debt, the creditor is usually motivated by a gratuitous intent (animus donandi). Such a gratuitous juridical act is tantamount to a donation and should, therefore, be subjected to the conditions of substance applicable to liberalities (collation, reduction, revocation...). However, the conditions of form pertaining to donations are not applicable.

A. Levasseur, *Precis in Conventional Obligations: A Civil Code Analysis*, at 84 (1980).[15]

Accordingly, the Court concludes that the oral statements made by Williams at the conclusion of the examination under oath, as evidenced by the

---

yet from Liberty Mutual you're waiving any additional claims and that you no longer are going to pursue any of those claims from Liberty Mutual, is that correct? A. [Williams] Correct.)

15  See also, comment (b) to La. C.C. art. 1888 ("Although remission is an act gratuitous in principle, it is considered a sort of indirect liberality not subject to the requirements of form prescribed for donations.")
12

written transcript which she signed, constitute a valid remission of Liberty Mutual's further liability to the plaintiff concerning her Hurricane Gustav, fire and burglary claims.

## C. Williams' claim for recoverable depreciation

Having determined that Williams validly remitted her pending insurance claims against Liberty Mutual, the Court now examines the remaining claim of recoverable depreciation for the damage sustained to the home as a result of Hurricane Gustav. That Williams has not remitted this claim is uncontroverted. Liberty Mutual asserts, however, that the time period for making this claim has expired. In opposition, Williams asserts that her right to receive payment for recoverable depreciation was preserved by the timely filing of the present lawsuit.

Pursuant to the homeowner's policy, Liberty Mutual paid Williams the actual cash value of the damage caused to the home by the hurricane. Williams reserved the right to be reimbursed for repair or replacement costs exceeding the amount of money paid by the insurer. According to the policy, the insured is required to make any claim for additional repair costs within 180 days of the after the loss.[16] Nevertheless, La. R.S. 22:1264B provides specific conditions as to losses arising from declared emergencies. La. R.S. 22:1264B states:

> B. For losses that arose due to a catastrophic event for which a state of disaster or emergency was declared pursuant to law by civil officials, for those areas within

---

16   See Defendant's Exhibit A-1, LibertyGuard Deluxe Homeowners Policy, Section I – Conditions, p. 10 of 17 (doc. 13-2).

13

> the declaration, any policyholder with replacement cost provisions shall be entitled to complete repairs to the property *within one year from the date of the loss or the issuance of applicable insurance proceeds, whichever is later.* Adherence to this provision shall entitle the policyholder with a replacement cost provision to receive full value of the covered damage that has been repaired, without reduction due to depreciation.

(emphasis added)

Liberty Mutual concedes that La. R.S. 22:1264B supersedes the insurance policy provision and provided Williams with one year, rather than 180 days, to complete the repairs to the home and thereafter, to make a claim for any additional repair or replacement costs. According to the statute, the start of the one-year period is triggered by the latest of the date of the loss or the issuance of applicable insurance proceeds. The date of loss of the hurricane damage was approximately September 1, 2008. Liberty Mutual issued two payments to Williams in relation to the Hurricane Gustav damages, the latest of which was made on October 15, 2008.[17]

Because of the absence of case law or secondary sources construing La. R.S. 22:1264B, the Court is without guidance as to its interpretation, and must rely solely on the plain language of the statute itself to determine its applicability to the facts of the instant dispute. Pursuant to the statutory language, the Court finds that Williams had one year from October 15, 2008, the latest date of receipt

---

17  Williams makes no assertion that Liberty Mutual issued any payments to her for the hurricane-related damages to the home after this date.

of insurance proceeds, to complete the repairs to her home. By completing the repairs within this time, Williams would have preserved her claim for recoverable depreciation.

The record lacks any indication that Williams completed the repairs to the home within the allocated time period, nor does Williams claim that she did. In opposition to the defendant's motion for summary judgment, Williams merely asserts that she "made her claim by filing suit prior to the deadline for claims for Hurricane Gustav."[18] The plaintiff cites no authority to support the proposition that the act of filing suit adequately substitutes for compliance with the requirements of La. R.S. 22:1264B or the homeowner's policy.[19] Therefore, by virtue of Section 1264B, the Court concludes that Williams has forfeited her right to make a claim against Liberty Mutual for recoverable depreciation for damage sustained to the home in Hurricane Gustav, due to her failure to complete the home repairs within the applicable one-year period.

---

18  Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, p. 5 (doc. 23). Williams' lawsuit was originally filed in Louisiana state court on September 1, 2009, exactly one year from the date Hurricane Gustav struck South Louisiana.
19  The homeowner's policy provides that no action can be brought by the insured unless the policy provisions have been complied with. Exhibit A-1, LibertyGuard Deluxe Homeowners Policy, Section I – Conditions, p. 10 of 17 (doc. 13-2).

## IV. ORDER

Accordingly, for the reasons stated herein, the motion for summary judgment by the defendant, Liberty Mutual, is hereby GRANTED.

Baton Rouge, Louisiana, November 10, 2011.

BRIAN A. JACKSON, CHIEF JUDGE
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA